IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEBRA SIMON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 14-0587-CV-W-ODS |
| ) | |
| BLUE CROSS AND BLUE SHIELD ) | |
| OF KANSAS CITY, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION GRANTING PLAINTIFF'S MOTION TO REMAND

Pending is Plaintiff's Motion to Remand. The Court has considered the parties' arguments, and the motion (Doc. # 10) is granted.

I. BACKGROUND

Plaintiff Debra Simon filed this suit in Jackson County Circuit Court on behalf of herself and on behalf of the putative class. She alleges Defendant offered health insurance plans on the Federal Exchange created pursuant to the Affordable Care Act ("the Exchange"). Petition, ¶¶ 6-7. Consumers were able to search the Exchange for insurers and policies via the internet. A consumer could gain more information about Defendant's plan(s) by clicking on links on the Exchange's website; the link would take the consumer to the insurer's site. Petition, ¶ 8. Defendant's website (but not the Exchange) included a "Provider Directory," which purported to "list[ ] all of the in-network physicians associated with that plan." Petition, ¶ 9. Unfortunately, Defendant's Provider Directory for the "Blue Select Plan" included physicians who were not in the network for that plan. Petition, ¶ 10. Plaintiff alleges this error caused consumers to "receive[ ] an inferior plan lacking the network providers previously listed," which caused them to incur out-of-network charges or pay additional sums to get the plan they actually expected. Petition, ¶¶ 11-13.

Plaintiff asserts two claims. Count I asserts violations of the Missouri Merchandising Practices Act ("MMPA") and Count II asserts a claim for unjust enrichment. She seeks to represent a class consisting of

> All Blue . . . Cross Blue Shield of Kansas City policyholders who purchased a plan via the Exchange, and who received a plan with less in-network healthcare providers than what Blue Cross promoted in its website.

Petition, ¶ 21.

Plaintiff is a citizen of Kansas. Defendant is incorporated in the State of Missouri and has its principal place of business in that state as well. The Notice of Removal includes affidavits confirming that the Blue Select Plan has a smaller physician network – and is cheaper than – the "Preferred Care Blue Plan." 5,394 people enrolled in the Blue Select Plan: 3,504 (or 64.96%) live in Missouri, and the remaining 1,890 (35.04%) live in Kansas. Kincaid Declaration, ¶ 3. The Blue Select Plan has "a term of one year and consumers are generally not permitted to change plans mid-year, except when a special enrollment event occurs." McCabe Declaration, ¶ 5.

## II. DISCUSSION

Defendant removed this case to federal court, alleging federal jurisdiction exists under 28 U.S.C. § 1332(d)(2), which codifies portions of the Class Action Fairness Act ("CAFA"). This statute (when combined with section 1332(d)(5)(B)) provides that district courts have original jurisdiction over cases in which a claim is asserted on behalf of a class and where (1) there are more than 100 class members, (2) more than $5 million is in controversy, and (3) at least one member of the class is a citizen of a state different from that of at least one defendant. Plaintiff and other members of the class are citizens of Kansas and Defendant is a citizen of Missouri, so the minimal diversity requirement is satisfied.[1] Defendant's affidavits establish, and Plaintiff does not dispute, that the class

---

[1] Defendant did not invoke the "regular" diversity provision, 28 U.S.C. § 1332(a), probably because removal on this basis is barred by 28 U.S.C. § 1441(b). Cf. Horton v. Conklin, 431 F.3d 602, 605 (8th Cir. 2005) (holding that the forum defendant rule is a

2

consists of more than 100 members.  Plaintiff challenges Defendant's assertion that more than $5 million is in controversy.  Alternatively, Plaintiff contends the "interests of justice" exception applies and the Court should exercise its discretion to remand the case.  The Court concludes that more than $5 million is in controversy.  However, the Court also concludes it should exercise its discretion to decline jurisdiction pursuant to the "interests of justice" exception codified at 28 U.S.C. § 1332(d)(4).

### A.  Amount in Controversy

The party invoking federal jurisdiction bears the burden of demonstrating it exists, so Defendant – as the party removing the case to federal court – bears the burden in this case.  E.g., Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009).  Factual matters (such as the amount in controversy) must be established by the preponderance of the evidence.  E.g., id. at 957 & n.5.  When removal is based on section 1332, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy" unless "the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded."  28 U.S.C. § 1446(c)(2)(A).  In that case, "the notice of removal may assert the amount in controversy."  Id.  Missouri does not permit the plaintiff to demand a specific sum, so the Court looks to the Notice of Removal to ascertain the amount in controversy.  In so doing, the Court must keep in mind that Defendant's burden is a pleading requirement and not a demand for proof.  E.g., Raksas v. Johnson & Johnson, 719 F.3d 884, 888 (8th Cir. 2013).

The Declarations attached to the Notice of Removal establish that the difference in premiums for the Blue Select Plan and the Preferred Care Blue Plan (multiplied by the number of people who purchased the Blue Select Plan), estimated for a year, comes to approximately $3.8 million.  Plaintiff quarrels with the extrapolation to a year's worth of premiums, reasoning that Defendant would not continue to display false

---

jurisdictional defect and cannot be waived).  By its terms, the prohibition on removal by defendants who are citizens of the forum applies only when jurisdiction is predicated on section 1332(a), so it does not apply when jurisdiction is predicated on section 1332(d).

information on its website for that long. However, Plaintiff fails to account for the fact that the insurance contracts are valid for one year, and the consumer cannot change coverage (absent the occurrence of certain life events) before the year has passed. "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed [the requisite amount], then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much. Even if it is highly improbable that the Plaintiffs will recover the amounts Defendant[ ] [has] put into controversy, this does not meet the legally impossible standard." Raskas, 719 F.3d at 888 (quotation omitted). Put another way, the question is whether the class *might* recover actual damages of approximately $3.8 million, not whether it really will. E.g., Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 944 (8th Cir. 2012) (citing Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002)). Defendant's extrapolation seems reasonable.

Obviously, $3.8 million does not exceed $5 million. However, in addition to actual damages, Plaintiff seeks punitive damages and attorney fees pursuant to the MMPA. The value of these recoveries is included when assessing the amount in controversy. E.g. Hartis v. Chciago Title Ins. Co., 656 F.3d 778, 781-82 (8th Cir. 2009) (statutory attorney fees included in amount in controversy); OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 348 (8th Cir. 2007) (punitive damages included). The Court has little difficulty concluding that a jury might legally award punitive damages in an amount that brings the amount in controversy to over $5 million. And even if not, any attorney fees awarded – when added to punitive damages – would definitely place the amount in controversy over that figure.

B. The "Interests of Justice Exception"

The parties address two exceptions to CAFA jurisdiction. They agree one of them does not apply, but the Court believes it appropriate to address them both.

The one that does not apply is the "local controversy" exception and is codified at 28 U.S.C. § 1332(d)(4)(B). This exception requires the district court to decline jurisdiction if more than two-thirds of the class members and the defendant are both citizens of the state in which it was filed. As noted earlier Defendant is a citizen of

4

Missouri – but only 64.96% of the class members are citizens of Missouri, so the local controversy exception does not apply. The Court makes this observation to demonstrate how close this case is to triggering a nondiscretionary obligation to refuse jurisdiction and remand the case.

The exception at issue is the "interests of justice" exception set forth in section 1332(d)(3). The statute provides that a court "may in the interests of justice and looking at the totality of the circumstances decline to exercise jurisdiction" over a class action if "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed . . . ." The statute then sets forth six factors the district court must consider when determining whether jurisdiction should be declined:

> A. Whether the claims involve matters of national or interstate interest,
> B. Whether the claims will be governed by the laws of the state in which the action was originally filed,
> C. Whether the case has been pleaded in a manner designed to avoid federal jurisdiction,
> D. Whether the forum where the suit was brought has a "distinct nexus with the class members, the alleged harm, or the defendants,"
> E. "[W]hether the number of citizens of the State in which the action was originally filed . . . is substantially larger than the number of citizens from any other State" and whether "the citizenship of the other members is dispersed among a substantial number of States," and
> F. Whether another class action asserting these or similar claims was filed in the preceding three years.

The interests of justice exception explicitly states the district court "may . . . decline to exercise jurisdiction" over the case, and it is generally accepted that the district court's decision is one of discretion. "Under the discretionary jurisdiction provision, however, Congress permitted the district court greater latitude to remand class actions to state court. . . . [T]he district court does not wield unfettered discretion over whether to remand a case; instead Congress provided a list of factors to guide the district court's consideration." Preston v. Tenet Healthsystem Memorial Med. Ctr, Inc., 485 F.3d 804, 810 (5th Cir. 2007); see also Knepper v. Right Aid Corp., 675 F.3d 249, 260 (3d Cir. 2012) (dicta).

5

Defendant's suggestion that Preston holds the interests of justice exception should be construed narrowly in favor of preserving federal jurisdiction is incorrect. The Fifth Circuit intimated "that the local controversy and home state exceptions and home state exceptions should be construed narrowly and resolved in favor of federal jurisdiction." This was contrasted with the discretionary power bestowed by the interests of justice exception, which the Fifth Circuit interpreted to mean that "Congress permitted the district court greater latitude to remand class actions to state court." 485 F.3d at 810. There is no indication in Preston (or any other case cited by the parties or discovered by the Court) that remand under section 1332(d)(3) is not a discretionary decision to be guided by the six factors Congress enumerated, nor is there any indication that the Court must apply a presumption in favor of retaining jurisdiction.

Defendant also cites a passage from Preston (which itself relied on a passage from the Eleventh Circuit's decision in Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006)) to the effect that the interests of justice exception applies "to a controversy that uniquely affects a particular locality to the exclusion of all others." Placing extreme weight on the latter portion of this excerpt, Defendant repeatedly contends that the presence of Kansas class members means the case should not be remanded because this dispute does not involve Missouri citizens "to the exclusion of" all citizens from other jurisdictions. The Court concludes Defendant places undue weight on this phrase (which is not binding on the Court in any event). There is never a reason to discuss the interests of justice exception when the case applies exclusively to citizens of the forum state. The only reason to discuss the interests of justice exception is because between one-third and two-thirds of the class members are from the forum state – which necessarily means that between one-third and two-thirds of the class members are from outside the forum state. Thus, to discuss the interests of justice exception inevitably means there are class members from outside the forum state – so, under Defendant's theory, the interests of justice exception will never be applied.[2] The Court rejects Defendant's categorical argument.

---

[2] It should be pointed out that Preston affirmed the district court's remand under section 1332(d)(3), even though the only determination with regard to citizenship of

6

## 1. National or Interstate Interest

The first factor is whether the case presents issues of national or interstate interest. The Court concludes it does not. The case presents alleged violations of Missouri law by a Missouri citizen. Those allegedly harmed are citizens of one of two states (Kansas or Missouri), and most of those allegedly harmed are Missouri citizens. The case does not involve citizens from many jurisdictions. The case does not involve a nationwide marketing effort, as the parties agree the two insurance programs at issue were offered only to citizens of the five counties comprising the Kansas City metropolitan area.

Defendant emphasizes that slightly more than one-third of the class members are from Kansas, and further points out that the Kansas City metropolitan area is not the relevant geographic unit; instead, the question is whether the dispute relates to a single state. While slightly more than one-third of the class members are Kansas citizens, this fact does not defeat the Court's conclusion that the case does not implicate national or interstate concerns. As noted earlier, if this fact could defeat the first factor, then section 1332(d)(3) would be a dead letter. These are factors to be weighed, not elements to be satisfied. Given the universe of class actions, this one presents minimal national or interstate interest.

Defendant also argues there is a national interest because of the Exchange's involvement in this case. It contends that one of its defenses places legal responsibility for any of Plaintiff's damages on the Exchange. This argument is apparently a reference to Affirmative Defense # 12, which alleges "Plaintiff's claims are barred, in whole or in part because Plaintiff's alleged damages . . . were caused by acts or omissions of other parties, and not by any act or omission of Blue Cross." However, the federal government is not a party to the suit, and Plaintiff's claims do not implicate the federal government generally or the Exchange specifically. It is a specific form of denial. The Petition mentions the Exchange for background purposes, but it also makes

---

class members was "that at least one-third of the class were citizens of Louisiana at the time of filing suit." 485 F.3d at 822.

clear that the case is about the content of Defendant's website. The Court views the Exchange's alleged importance as a red herring.

### 2.  Governing Law

As stated earlier, Plaintiff asserts claims for violation of the MMPA and for unjust enrichment. The MMPA is a Missouri statute. Plaintiff reasons that the unjust enrichment claims are also governed by Missouri law because the recipient of the unjust enrichment is a Missouri citizen, the enrichment occurred in Missouri, and the events giving rise to that unjust enrichment occurred in Missouri. Defendant counters that the MMPA may not apply if it turns out the Plaintiff's allegations are wrong and the misleading information came from the Exchange (i.e., from outside Missouri) and not from Defendant (i.e., from within Missouri). Of course, if the misleading information came from the Exchange and not from Defendant itself, then Defendant wins because it did nothing wrong. More importantly, there is no claim based on any Kansas counterpart to the MMPA; either the MMPA applies or it does not, and this determination will be based on the merits and Missouri's choice of law rules – so either way, Missouri law will govern the entirety of Count I.

Defendant contends the unjust enrichment claim "may well be governed by Kansas law, not Missouri law." Defendant's Suggestions in Opposition at 12. Of course, it also may not be governed by Kansas law – and it is certainly governed by Missouri law with respect to almost 65% of the class. Whether the other 35% of the unjust enrichment claims are governed by Missouri law or Kansas law will depend on Missouri's choice of law rules. Under these circumstances, the Court concludes Missouri law will control the majority – if not the entirety – of the issues in this case, and under these circumstances it makes more sense to permit a Missouri state court to resolve these issues. The second statutory factor weighs in favor of declining jurisdiction.

### 3. Pleading to Thwart Federal Jurisdiction

Defendant does not contend Plaintiff has crafted its pleadings in a manner designed to avoid federal jurisdiction. This factor does not augur in favor of maintaining suit in federal court.

### 4. Forum's Nexus to Class Members, Harm, and Defendant

Defendant is a citizen of Missouri and is headquartered in Jackson County, so there is a nexus between Defendant and Jackson County, Missouri. Plaintiff argues there is also a nexus between (1) the Kansas City Metropolitan area and (2) the class members and the harm. Defendant correctly points out that the statute speaks in terms of a connection with the forum and not a multi-state metropolitan area: here, the Kansas City metropolitan area – and the class members' citizenships – extends outside Missouri into Kansas. However, Defendant's observation does not end the inquiry. There is a connection between Missouri and approximately 65% of the class members (and, correspondingly, 65% of the harm). Defendant argues this is insufficient because the entirety of the class (and, correspondingly, the entirety of the harm) does not have a nexus to Missouri. The Court rejects this interpretation for the reasons previously expressed: accepting this view would preclude section 1332(d)(3)'s in any application where the entirety of the class was not from the same state, but section 1332(d)(3) clearly is intended to apply in circumstances when less than two-thirds (but more than one-third) of the class members are citizens of the forum state. The Court adheres to its view that this is a factor and not an element, and under the circumstances of this case Missouri has a significant nexus to the class members, the harm, and the Defendant.

### 5. Comparison of the Number of Citizens Inside and Outside the Forum and Dispersal of Class Members

Plaintiff compares the percentages of Missouri citizens to non-Missouri citizens and notes the percentages are quite disparate. Defendant focuses on the statute's reference to "the *number* of citizens" to insist that the proper comparison is not the percentage of Missourians to Kansans, but the numbers in each group. Under Defendant's view, then, the Court should compare the 5,394 Missouri citizens to the 3,504 Kansas citizens and conclude the difference – 1,890 – is not substantial.

The Court disagrees with Defendant's analysis. First, the Court deems it appropriate to consider the razor thin margin that precludes the outright rejection of federal jurisdiction under section 1332(d)(4)(B). Second, if undue weight is given to the raw numbers, a relatively small class actions would never be left with state courts – even though smaller class actions are less likely than larger (e.g., nationwide) class actions to burden interstate commerce in the manner CAFA was designed to combat. Cf. Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 681 (7th Cir. 2006) (discussing Congress's findings); see also West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 178 (4th Cir. 2011). Third, this factor's purpose (like the preceding one) is to further insure that Missouri's connection is substantially greater than that of any other state's connection. At worst this factor is not as strong as it might be in other cases, but by any measure Missouri's connection and interest is significantly greater than any other state's. This is not a situation where several or many states can claim to have a significant connection to the suit. The Court concludes the number of Missouri class members is substantially greater than the number of Kansas class members, and a significant number of class members are concentrated in Missouri.

### F. Previous Suits

The parties have not indicated that any similar class actions have been filed in the previous three years. This factor does not favor retaining jurisdiction over the suit.

### G. Final Consideration

Having considered the six statutory factors individually, the Court now considers them collectively. Keeping in mind CAFA's purposes and the factors prescribed by Congress, the Court concludes the case should be remanded. This suit does not involve matters of national or interstate interest. Whatever minimal weight is carried by the suit's connection to the Exchange is outweighed by tangential nature (and tangential importance) of that connection and the other factors the Court must consider. Missouri law will dictate the outcome for all of the class members on Count I and at least 65% of the class members on Count II. Whether Missouri law governs for the remaining 35% of the class members on Count II will involve yet another determination of Missouri law.

Missouri has a strong nexus to the Defendant. It also has a strong nexus to the class and the harm (or, at worst, 65% of the class and 65% of the harm). The portion of the class comprised of Missouri citizens is substantially greater than the portion from any other state, and the class members are not dispersed throughout the country. Plaintiff has not crafted its Petition in a manner designed to thwart federal jurisdiction, and there have not been any class actions raising these claims in the last three years. In the final analysis, this is not the sort of suit the Court believes CAFA was concerned about. The interests of justice are best served by remanding the case to state court and allowing the state courts to apply Missouri law to the Missouri defendant and the class comprised largely of Missouri citizens. The Missouri courts are also better situated to apply Missouri's choice of law rules and decide whether Missouri law applies to the Kansas citizens in the class. The Court declines to exercise jurisdiction over this case.

### III. CONCLUSION

The Court concludes federal jurisdiction exists pursuant to 28 U.S.C. § 1332(d)(2). However, the Court exercises its discretion to decline jurisdiction over the

case pursuant to 28 U.S.C. § 1332(d)(3).  The case is remanded to the Circuit Court for Jackson County, Missouri.

IT IS SO ORDERED.

DATE: September 9, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT